**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **VANDERBILT UNIVERSITY,** § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | **Civ. Action No. _____** |
| § | |
| **NATIONAL LABOR RELATIONS** § | |
| **BOARD, a federal administrative agency,** § | |
| **and LISA Y. HENDERSON, Regional** § | |
| **Director, NLRB Region 10,** § | |
| § | |
| *Defendants.* § | |

## PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff Vanderbilt University ("Vanderbilt" or "the University") files this Verified Complaint and Request for Declaratory and Temporary and Permanent Injunctive Relief against Defendants National Labor Relations Board ("NLRB" or "Board") and Lisa Y. Henderson ("Henderson"), Regional Director of NLRB Region 10 (collectively, "Defendants"), under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure. Vanderbilt asks the Court to declare that certain Board regulations are contrary to law and therefore invalid as applied here. The regulations purport to force Vanderbilt to disclose confidential student information.[1] That information is protected from disclosure by a federal statute, the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. Therefore, Vanderbilt cannot disclose the information. If Vanderbilt did so, it would violate the students'

---

[1] Vanderbilt contends in the NLRB's proceedings that the NLRB should decline to exercise jurisdiction over students like those the Union seeks to represent. By filing this action, Vanderbilt does not waive this position.

privacy rights and place its own federal funding at risk. Vanderbilt needs the Court to intervene and declare the regulations contrary to law as applied.

## I.     <u>SUMMARY</u>

1.    This case concerns three unlawful Board regulations and their arbitrary and capricious application. Under 29 C.F.R. § 102.63(b)(1)(iii), a respondent employer in a union-representation proceeding must provide the NLRB and union with certain personal information about employees in a proposed election unit. That information includes the employees' names, work locations, shifts, and job classifications. Under 29 C.F.R. § 102.66(d), if a respondent employer fails to provide that information, it will be blocked (i.e., "precluded") from presenting evidence or argument on whether the unit is appropriate for an election. Under 29 C.F.R. § 102.67(l), if the Regional Director directs an election, the respondent employer will be required to disclose a voter list including employees' names, home addresses, personal e-mail addresses and phone numbers, work locations, job classifications, and shifts.

2.    Here, Defendants have applied and will apply these regulations in a proceeding involving a petition by Vanderbilt Graduate Workers Union United, International Union, UAW (the "Union") to represent certain graduate students enrolled at Vanderbilt. Following a petition like the one by the Union, the NLRB in certain instances holds a hearing and may allow briefing by the Union and respondent employer to determine the appropriate election unit. In response to the petition, and as a part of this process, Vanderbilt was required to provide the information about the proposed election unit specified by 29 C.F.R. § 102.63(b)(1)(iii); if Vanderbilt did not provide the required information, the University would be precluded from presenting an argument at either a hearing or in briefing about why the Union's proposed unit would be inappropriate. Vanderbilt could not, however, provide the required information, as the information was protected under FERPA, 20 U.S.C. § 1232g.

3.      FERPA is a federal statute protecting the privacy of student education records. It generally forbids covered educational institutions from disclosing a student's education records without the student's written consent. It defines education records broadly to include personally identifiable information about a student, including but not limited to the student's name, individual attendance information, and service activities on behalf of the University. Defendants demanded that Vanderbilt provide education records under 29 C.F.R. § 102.63(b)(i)(C).

4.      Violating FERPA carries significant legal sanctions. If an institution maintains a discloses student education records without student consent, it can be stripped of its federal funding. *See* 20 U.S.C. § 1232g(b)(1) (providing that "[n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records" without written consent).

5.      Under the Board's regulations, Vanderbilt would have been required to simultaneously disclose the student information not only to the Board, but also to the Union The harm from such disclosures occurs as soon as the FERPA-protected information is improperly disclosed.

6.      On October 3, 2024, Vanderbilt objected to the required disclosure under 29 C.F.R. § 102.63(b)(1)(iii) and explained its obligations under FERPA to the NLRB. It explained that the required information is protected educational records under FERPA. Vanderbilt could not disclose the covered records unless the records fell into one of FERPA's exceptions.

7.      FERPA's exceptions provide that, among other things, an institution may release protected records with students' consent or in response to a lawfully issued subpoena, if affected students are given timely notice and an opportunity for the students to take "protective action." *See* 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31.

8.      In response to Vanderbilt's objections and FERPA obligations, Defendant Henderson never denied that FERPA applied. She issued a subpoena to Vanderbilt on October 7, 2024, under 29 U.S.C. § 161(1), seeking the information required by the NLRB's regulations, and, if and when appropriate, a voter list. She extended the date for Vanderbilt to submit its statement of position to October 18, and extended the hearing date to October 21, 2024.

9.      Under FERPA, students must be given notice of a subpoena like the one issued by Defendant Henderson seeking students' protected records; they must also be given a reasonable time to object to the subpoena and take "protective action." On October 8, 2024, Vanderbilt notified its students in the potential election unit that it had received a subpoena for certain of their records protected under FERPA, and students immediately began objecting to the disclosure. On October 15, 2024, Vanderbilt filed a second motion to postpone reiterating the need for more time to resolve the student's objections. As of October 28, 2024, over 80 students in the potential election unit have objected to the disclosure of their protected information, including students who retained counsel and filed a motion to intervene in the NLRB proceeding.

10.     Defendant Henderson denied Vanderbilt's second motion to postpone on the morning of October 18, thereby denying an opportunity for the student's objections to be fully heard. The students immediately appealed Defendant Henderson's ruling. Nonetheless, Vanderbilt was required to respond to the NLRB on October 18, before all its students' objections to the subpoena had been resolved. Because of Vanderbilt's competing obligations under the Board's regulations and FERPA, Vanderbilt complied with the NLRB's regulations and the subpoena by providing the Region and the Union with a redacted form of the requested information that provided as much information as possible while protecting student identities until the student objections could be fully heard.

11. On October 25, in response to the redacted filing, the Hearing Officer, acting on Defendant Henderson's instructions, found Vanderbilt in violation of 29 C.F.R. § 102.63(b)(i)(C). The NLRB's Hearing Officer, acting on instructions from Defendant Henderson, therefore issued a preclusion order under 29 C.F.R. § 102.66(d) blocking Vanderbilt from offering any evidence or argument in the Board proceeding about the proposed election unit.

12. As applied here, 29 C.F.R. §§ 102.63(b)(i)(C) and 102.66(d) are unlawful. Together, the regulations automatically preclude a respondent from asserting its rights under the NLRA if it fails to provide specified information. But an educational institution like Vanderbilt cannot provide that information about its students without the students' written consent or without the students' ability to have their objections heard or seek protective action from a lawfully issued subpoena. Again, the harm is complete upon disclosure.

13. The NLRB's regulations make no allowance for student consent, offer no opportunity for students to object to a lawfully issued subpoena, put no limit on redisclosure of protected information, and penalize respondents like Vanderbilt for complying with their obligations under FERPA. They are arbitrary, capricious, not in accordance with law, and in excess of the Board's statutory jurisdiction. The same holds true for the mandated disclosure of the voter list under 29 C.F.R. § 102.67(l).

14. Vanderbilt has been injured by the regulations and their application here. The regulations put Vanderbilt in an untenable position. Vanderbilt has been and will continue to be forced to choose between complying with FERPA and exercising its rights under the NLRA. Vanderbilt chose to protect student privacy, as it was required to do by Congress, and for which the harm of an unlawful disclosure cannot be undone. Despite Vanderbilt doing its best to comply with the demands of both federal laws, Defendants applied the NLRB regulations to penalize

Vanderbilt for its approach to student records and its alleged failure to fully comply with the NLRB regulations, even though doing so would violate FERPA. Because of the NLRB's application of its regulations, Vanderbilt now faces a representation petition for a unit of 2,700 graduate students, has been barred from offering evidence or argument about why that unit is inappropriate, and the Hearing Officer has closed the NLRB's record.  This is a draconian outcome.

15.     This Court's intervention is necessary now. Without the Court's assistance, Vanderbilt has been and will continue to be forced to choose between its obligations under FERPA and compliance with the Board's regulations. And if Vanderbilt capitulates to Defendants and complies with the Board's regulations, it will place its federal funding in jeopardy. *See* 20 U.S.C. § 1232g(b)(1).

16.     Without the Court's assistance now, Vanderbilt will have no path to meaningful judicial review. Vanderbilt will be barred from effectively contesting the unit's scope.  The election will proceed without Vanderbilt having an opportunity to offer evidence or argue its case to the Board.  Nor will Vanderbilt be able to correct this injustice on an appeal to the Board.  Under the normal course of NLRB process, Vanderbilt will be unable to seek immediate review of the Board's prior ruling on preclusion. Instead, to receive any review of the election and unit, Vanderbilt will have to refuse to comply with any certification order and face an unfair labor practice charge from the Board. That charge inevitably will result in a summary order from the Board finding Vanderbilt in violation of the NLRA. That order will place Vanderbilt in legal and financial jeopardy. And while Vanderbilt will be able to petition for review of that second order, it will have no additional opportunity to offer new evidence about the unit's appropriateness. The record will be fixed, and Vanderbilt's rights will be irrevocably prejudiced.

17.     The dilemma faced by Vanderbilt will extend beyond the original information

required to be disclosed in connection with its statement of position. If and when an election is ordered, Vanderbilt will be required to disclose FERPA-protected student information in a voter list, which is required to be provided to the NLRB and the Union once an election is ordered. 29 C.F.R. § 102.67(l).

18.     Defendants cannot lawfully place Vanderbilt in this dilemma. Congress has directed educational institutions like Vanderbilt to protect the privacy of student educational records. Congress has specified the procedures Vanderbilt must follow before disclosing those records to any third party, including Defendants. Defendants' regulations purport to force Vanderbilt to either violate its privacy obligations or surrender its rights under the NLRA. The regulations are therefore inconsistent with law, arbitrary and capricious, and in excess of the Board's delegated authority. They must be set aside as applied to a FERPA-covered institution. Alternatively, Vanderbilt asks the court to order the NLRB to proceed with a process that is FERPA-compliant, and to reinstate Vanderbilt's ability to present evidence and argument about the appropriateness of the potential election unit.

## II.     PARTIES

19.     Plaintiff Vanderbilt is a non-profit, 501(c)(3) private University incorporated in the State of Tennessee. It operates a private, non-profit teaching and research university in Nashville, Tennessee. Vanderbilt is divided into ten (10) schools and colleges: the College of Arts and Science, the Blair School of Music, Peabody College of Education and Human Development, the Divinity School, the Graduate School, the School of Engineering, the Law School, the School of Medicine, the School of Nursing, and the Owen Graduate School of Management. In addition to the departments that fall within each of the schools, Vanderbilt also operates research labs, centers, and institutes.

20.     Defendant NLRB is an independent federal agency created by the U.S. Congress in 1935 to administer the National Labor Relations Act. 29 U.S.C. § 153(a). The NLRB oversees union-representation proceedings and remedies unfair labor practices. To manage representation proceedings, it has adopted regulations, which are set out in part in 29 C.F.R. part 102, subpart D.

21.     Regional Director Lisa Y. Henderson, Regional Director of Region 10, has received delegated authority from the Board pursuant to 29 U.S.C. Sec. 153(b) to act with respect to questions of representation under 29 U.S.C. Sec. 159 that arise in areas of Alabama, Georgia, Kentucky, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia. The Defendant maintains a Resident Office of Region 10 at 810 Broadway Ste 302, Nashville, TN 37203.

### III.     JURISDICTION AND VENUE

22.     This Court has jurisdiction under 28 U.S.C. § 1331, as well as 5 U.S.C. §§ 701 and 706(2), which authorize the Court to review, hold unlawful, and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, as well as action that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. Defendant Henderson took the actions described in this complaint in accordance with a regulation, 29 C.F.R. § 102.63, which, as applied here, conflicts with a federal statute, 20 U.S.C. § 1232g, under the Declaratory Judgment Act, 28 U.S.C. § 220. Jurisdiction is proper because a legal controversy exists between Plaintiff and Defendants regarding the interpretation and application of 20 U.S.C. § 1232g, 29 U.S.C. § 159, and 29 C.F.R. §§ 102.63, 102.66, and 102.67.

23.     Personal jurisdiction arises here because Defendant Henderson has taken actions in Tennessee, which give rise and relate to the claims in this lawsuit, including but not limited to issuing the October 7, 2024 subpoena in this case; declining to reschedule the representation hearing despite receipt of student objections in response to the subpoena; denying Plaintiff's

Motion to Postpone Subpoena Compliance, Submission of Statement of Position, and Hearing Until Resolution of Student Intervention and FERPA Disclosure Objections to October 7, 2024 Subpoena; and ultimately instructing the Hearing Officer receiving evidence regarding the appropriate unit to issue a preclusion order against Vanderbilt for failing to comply with the NLRB's regulations.

24.    Venue is proper here because a substantial amount of the acts and omissions giving rise to this lawsuit took place in this District. 28 U.S.C. § 1391(b)(2).

## IV.    <u>STANDING</u>

25.    Vanderbilt has standing to challenge the Board's regulations. A party has standing to challenge a regulation under the APA when it faces an imminent, concrete injury resulting from the regulation. Vanderbilt has suffered and will continue to suffer such an injury resulting from the Board's regulations because those regulations have imposed requirements on Vanderbilt inconsistent with Vanderbilt's obligations under FERPA. Those conflicting requirements have forced and will continue to force Vanderbilt to choose between satisfying its obligations under FERPA and exercising its rights under the NLRA. They also place Vanderbilt in jeopardy of surrendering its federal funding. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("The injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."). *Accord Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (injury need not be actualized; need only be imminent); *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) ("[A] likely 'loss of funds promised under federal law' satisfie[s] Article III standing." (quoting *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1236 (9th Cir. 2018))).

26.    Vanderbilt accepts federal funding. It is therefore prohibited from releasing any portion of the FERPA-protected education records of its students without the students' consent,

except under exceptions defined by the statute. *See* 20 U.S.C. § 1232g(f); 34 C.F.R. § 99.67. *See also United States v. Miami University*, 294 F.3d 797, 803 (6th Cir. 2002) (reasoning that once a university accepts federal funding and the attached conditions, the school is prohibited from releasing the education records without consent).

27.     FERPA delineates the circumstances by which education records can be released without student consent. 20 U.S.C.A. § 1232g(b)(1).

28.     Release of this information to Defendants, acting as an agency administering the National Labor Relations Act's provisions on questions as to representation, and to the Union, is not an exception set forth in FERPA. *Id.*

29.     An educational agency or institution that unlawfully releases a student's record may lose federal funding. 20 U.S.C. § 1232g(b)(1).

30.     By providing the information sought by Defendants, Vanderbilt would breach the rights of the students under its protection and violate federal law and risk loss of federal funding. *See id.*

31.     By refusing to provide the information protected by FERPA, Vanderbilt has suffered and is suffering and will continue to suffer penalties under the Board's regulations, including being precluded from offering evidence or argument regarding whether the proposed unit is appropriate. *See* 29 C.F.R. §§ 102.63(b)(i)(C), 102.66(d). *See also* 29 C.F.R. § 102.67(l) (requiring respondent to provide final voter list with additional personal information about voters in the election unit).

32.     These harms to Vanderbilt's rights and the threatened loss of federal funding are concrete, particularized, imminent injuries. They confer standing on Vanderbilt under Article III.

## V.   FACTS

### The Board's Representation-Case (RC) Process

33.   The Board oversees the union-election process. The Board delegates most day-to-day management to its Regional Directors, who make the front-line rulings on election-related issues. *See* 29 U.S.C. §§ 153, 159; 29 C.F.R. § pt. 102 subpt. D.

34.   The election process usually begins with a petition. This petition is filed by a petitioner, usually a union, that seeks to represent a group of employees. The petition identifies the group of employees the union wants to represent. The petition must also include a "showing of interest" from at least 30% of those employees. The petition is served on the respondent, usually an employer, along with documents describing the Board's procedures. These documents include a template for the respondent's position statement. *See* 29 C.F.R. §§ 102.60, 102.61.

35.    Once a union files the petition and serves it on the respondent employer, the Regional Director serves the petitioner and respondent with a notice of hearing. This notice sets the hearing date, which is usually eight days after service. The respondent must post the notice where it can be seen by employees in the proposed unit. *See* 29 C.F.R. § 102.63.

36.   The respondent must then prepare and file its position statement. The position statement is normally due no later than noon local time on the day before the hearing date. The position statement must set out any election-related issues the respondent intends to raise at the hearing. These issues can include, among other things, whether the proposed unit is appropriate under NLRA standards. *See* 29 C.F.R. § 102.63(b).

37.   The position statement must also include information about employees in the proposed unit. This information includes the employees' names, work locations, shifts, and job classifications. 29 C.F.R. § 102.63(b)(i)(C).

38.     If the respondent omits required information from its position statement, the regulations state that it is "precluded" from offering evidence or argument related to that information at the hearing. 29 C.F.R. § 102.66(d).[2]

39.     At the hearing, the petitioner responds to the respondent's arguments. The Regional Director then identifies disagreements among the parties and hears evidence only on issues involving material disputes of fact. If a respondent has been precluded from contesting an issue, the Regional Director will hear no argument or evidence from the respondent on that issue. The issue is effectively waived. *See* 29 C.F.R. §§ 102.64, 102.66.  Nevertheless, in the absence of an election agreement, the Region continues to take evidence from the petitioning union to determine whether there is an appropriate voting unit and, if so, how that unit should be defined.

40.     Based on the hearing record, the Regional Director decides whether a "question of representation" exists. If such a question does exist, the Regional Director issues a "decision and direction of election." This decision defines the voting unit and sets the voting dates, times, and place for the election. Although the respondent may seek discretionary review of the Regional Director's decision and direction of election from the NLRB, the election proceedings move forward while any such request is pending. The employer must therefore post a notice of the election for at least two days before the election date. The employer may be instructed to distribute the notice electronically. 29 C.F.R. § 102.67(b).

41.     The respondent must then give the petitioner a final voter list. This list includes the employees' personal information, including personal phone numbers, personal e-mail addresses (when available), work locations, shifts, and job classifications; for students, this information is protected by FERPA. 29 C.F.R. § 102.67(l).

---

[2] There are limited exceptions to this preclusion rule, such as issues related to the Board's jurisdiction. *See* 29 CFR 102.6(d). Those exceptions are not relevant here.

42. On election day, the employees vote by secret ballot. If more than half of eligible employees who cast ballots vote for union representation, the union is certified as their exclusive bargaining representative. *See* 29 C.F.R. § 102.68.

43. After ballots are counted, either the respondent or the petitioner may file objections to the conduct of the election. These objections must be filed within seven days of the vote count and must include a description of any supporting evidence. The Regional Director may, but does not always, hold a hearing to receive relevant evidence and argument. The Regional Director then rules on the objections. 29 C.F.R. § 102.69.

44. A party may request discretionary review of the Regional Director's ruling on objections to the Board. This request for review is based on the record developed during the post-election proceedings, including any hearing. 29 C.F.R. §§ 102.67(c), 102.69(c)(2).

45. If the Board affirms the Regional Director's decisions, including the decision and direction of election and any ruling on objections, there is no further avenue for appeal. Board orders certifying an exclusive representative (i.e., a union) are not reviewable directly in a court of appeals. *See* 29 U.S.C. § 160(f); *Am. Fed'n of Lab. v. NLRB*, 308 U.S. 401, 409 (1940); *Kindred Nursing Ctrs. E., LLC v. NLRB*, 727 F.3d 552, 558 (6th Cir. 2013).

46. An employer may get indirect review through the Board's unfair-labor-practice procedures. To do so, the employer must first refuse to comply with the Board's certification order and refuse to bargain with the union. The union then files an unfair-labor-practice charge accusing the employer of failing to bargain in good faith. The Board's General Counsel prosecutes the charge through an administrative process. That process ultimately concludes with a decision by the Board itself. The Board typically finds the employer in violation summarily, almost always in response to a motion for summary judgment. The employer may then petition a court of appeals

for review. *See* 29 U.S.C. § 158(a)(5), 160(f); 29 C.F.R. pt. 102 subpt. C. *See also Kindred Nursing Ctrs.*, 727 F.3d at 558.

47.     This review, however, is narrow. Courts give the Board wide latitude to define appropriate election units. The unit need not be the most appropriate unit; it need only be an appropriate one. So if a party loses its right to present evidence and argument about the shape of the unit in proceedings before the Regional Director, it loses its best opportunity to challenge the unit's definition and scope. Its rights are irrevocably prejudiced.  *See Kindred Nursing Ctrs.*, 727 F.3d at 558 (explaining that courts review the Board's unit determinations only for abuse of discretion).

**The Union's Petition to Represent Vanderbilt Students**

48.     On October 2, 2024, the Union filed an election petition with Region 10 of the Board, seeking to represent a unit of what it claimed to be 2,200 "graduate student employees enrolled at Vanderbilt University who provide instructional services, research services, or administrative services" at Vanderbilt's campus in Nashville, Tennessee.

49.     Vanderbilt also received correspondence from the Regional Director on October 2, 2024, ordering a hearing on October 10, 2024.

50.     Under Board regulations (e.g., 29 C.F.R. §§102.63(a)(1) and b(1)), Vanderbilt would have initially been required to submit a position statement by October 9, 2024, and appear for the noticed hearing the next day, October 10, 2024.

51.     Under 29 C.F.R. § 102.63(b)(i)(C), a position statement must include, among other things, "a list of the full names, work locations, shifts, and job classifications of all individuals in the proposed unit." If the position statement omits any of that information, the employer is

"precluded" from raising any issue, offering any evidence, cross-examining any witness, or presenting any argument related to the omitted information at the hearing. 29 C.F.R. § 102.66(d).

52. Vanderbilt, however, is an educational institution covered by FERPA. FERPA protects against the unapproved disclosure and use of student education records. "Education records" are those records that are (1) directly related to a student, and (2) maintained by an educational agency or institution or by a party acting for the agency or institution. 20 U.S.C. § 1232g(a)(4); 34 C.F.R. § 99.2.

53. Because the petition concerned a proposed unit of students, the information required under 29 C.F.R. § 102.63(b)(i)(C) included information that also qualified as an educational record under FERPA. FERPA therefore prevented Vanderbilt from unilaterally disclosing the information as required by the regulation. Instead, Vanderbilt could provide the information only if the students consented in writing or if a FERPA exception applied. *See* 20 U.S.C. § 1232g(b); 34 C.F.R. § 99.31.

54. To address these concerns and comply with FERPA, on October 3, 2024, Vanderbilt moved to postpone the hearing and the filing of its position statement.

55. On October 7, 2024, the Regional Director responded to Vanderbilt's motion by issuing a subpoena duces tecum (No. B-1-1MPGP9D; "the Subpoena") directing that Vanderbilt provide, by October 18, 2024, personal information about potential voters who should or should not be included in the proposed unit as required by 29 CFR § 102.63(b)(1)(i)(C). Again, under the regulations, Vanderbilt is required to provide this information to the NLRB and to the Union. The Regional Director also reset the deadline to submit the position statement to October 18, 2024, and rescheduled the hearing for October 21, 2024.

56.     The information requested in the Subpoena is maintained in Vanderbilt's students' education records and thus FERPA-protected. The information cannot be lawfully disclosed unless (a) the students consent, or (b) a lawfully issued subpoena compels the disclosure *and* students receive notice of the subpoena so that they can take "protective action" to prevent the disclosure. *See* 20 U.S.C. § 1232g(b)(2)(B); 34 CFR § 99.31(a)(9)(ii).

57.     On October 8, 2024, as required by FERPA, Vanderbilt notified the affected students about the Subpoena so that they would have the opportunity to "seek protective action." *See* 34 CFR § 99.31(a)(9)(ii).

58.     As of the date this Complaint is filed, more than 80 students have responded to Vanderbilt and Region 10 opposing disclosure in response to the Subpoena.

59.     On October 15, 2024, two students filed (1) a request to intervene directly in Board Case 10-RC-351808 and (2) a motion to stay enforcement of the Subpoena in order to have time to present specific objections to the disclosure of their FERPA-protected information.

60.     Vanderbilt then moved again to postpone the hearing and the filing of its position statement. It also moved to postpone its response to the Subpoena. Vanderbilt cited the students' objections and its obligations under FERPA. In its motion, Vanderbilt explained that its obligations under FERPA were irreconcilable with the Board's disclosure requirements. Vanderbilt could not disclose the students' information until the students consented or had an adequate opportunity to object.

61.     On October 18, 2024, the Region summarily denied Vanderbilt's motion without identifying its reasons, and without providing any due process for Vanderbilt or the students to have their objections meaningfully addressed. The Region also denied the graduate students' request to intervene and motion to stay the subpoena.

62. The graduate students filed an emergency appeal to the Board. Vanderbilt also sought emergency expedited relief from the Board under 29 C.F.R. §§ 102.67(c) and (j) so that it would not be forced to disclose the students' FERPA-protected information before the students' objections were adjudicated. As of the filing of this Complaint, the Board has not ruled on these appeals.

63. In the meantime, Vanderbilt was required to comply with the Subpoena by 12:00 pm CST on October 18. Vanderbilt therefore filed a position statement with appropriately redacted student information. It did so to balance its obligations under Board regulations with its obligations to the students under FERPA.

64. On October 21, 2024, the hearing began. Shortly after the hearing opened, the Union moved to preclude Vanderbilt from offering argument or evidence under 29 C.F.R. §§ 102.63(b)(1)(i)(C) and 102.66(d). The Union argued that Vanderbilt should be barred from presenting evidence and argument about the appropriateness of the unit because Vanderbilt's position statement omitted student information protected by FERPA.

65. The next morning, on October 22, 2024, Vanderbilt filed a written opposition to the Union's preclusion motion. Vanderbilt again argued that the information required under 29 C.F.R. § 102.63(b)(i)(C) was protected by FERPA and could not be unilaterally disclosed. After considering Vanderbilt's opposition, the NLRB's hearing officer, at Defendant Henderson's instruction, orally denied the Union's preclusion motion stating that the information redacted by Vanderbilt was not necessary to determine the unit scope issues being litigated in the hearing.

66. The next day, the Union filed a request for review with the Board.

67. On October 25, 2023, the NLRB's Hearing Officer, at Defendant Henderson's instruction, sought to "clarify" the October 22 decision denying the Union's motion to preclude.

The Hearing Officer ruled that, in fact, Vanderbilt would be precluded from offering evidence or argument on the unit's appropriateness because Vanderbilt had not provided the information required by 29 C.F.R. § 102.63(b)(i)(C).

68.     The Hearing Officer, at Defendant Henderson's instruction, made that ruling even though (a) Vanderbilt repeatedly advised her about Vanderbilt's obligations under FERPA, (b) no student had provided written consent to disclose the information required by the regulations or the subpoena, (c) more than 80 students had affirmatively objected to the disclosure of their information, (d) two students had moved to intervene to protect their educational information, and (e) those same students had petitioned the Board to review Defendant Henderson's decision to deny their motion to intervene and motion to stay the subpoena.

69.     On October 28, 2024, the Hearing Officer, at Defendant Henderson's direction, precluded Vanderbilt from even making an offer of proof regarding the evidence it would have presented had it not been precluded from doing so by the Board's regulations. That order further injured Vanderbilt's ability to participate and protect its rights in the representation-petition process. Thereafter, the Hearing Officer closed the record.

70.     Vanderbilt now files this action to challenge regulations. 29 C.F.R. §§ 102.63(b)(i)(C), 102.66(d), and 102.67(l) to the extent they have been and will be applied to Vanderbilt in a manner inconsistent with Vanderbilt's obligations under FERPA.

## COUNT I

### The Board's Rules Are Arbitrary, Capricious, and Contrary to Law
### (20 U.S.C. § 1232g; 5 U.S.C. § 706(2)(A), (C))

### The Board's Regulations Are Invalid as Applied to Vanderbilt

71.     Vanderbilt incorporates the preceding paragraphs by reference.

72.     As applied to Vanderbilt, 29 C.F.R. § 102.63(b)(i)(C), 102.66(d), and 102.67(l) are

arbitrary, capricious, not in accordance with law, and in excess of statutory jurisdiction. They irreconcilably contradict a federal statute, FERPA. FERPA forbids Vanderbilt from disclosing student information from educational records without written consent unless an exception applies. The Board's regulations contradict that statutory prohibition. The regulations purport to force Vanderbilt to disclose personally identifiable information of students protected by FERPA. They also penalize Vanderbilt for complying with its statutory duty under FERPA by precluding Vanderbilt from offering evidence or argument about the unit's appropriateness. *Compare* 29 C.F.R. §§ 102.63(b)(i)(C), 102.66(d), *with* 20 U.S.C. § 1232g(b), *and* 34 C.F.R. § 99.31.

73.     Because the regulations contradict a federal law, they are invalid. *See FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) ("The Administrative Procedure Act requires federal courts to set aside federal agency action that is 'not in accordance with law,' . . . which means, of course, *any* law, and not merely those laws that the agency itself is charged with administering."). *Accord Kansas v. United States Dep't of Lab.*, No. 2:24-CV-76, 2024 WL 3938839, at *7 (S.D. Ga. Aug. 26, 2024) (Department of Labor rule not in accordance with law because it violated the NLRA); *New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 535 (S.D.N.Y. 2019) (Department of Health and Human Services rule not in accordance with law because it violated Title VII of the Civil Rights Act of 1964 and the Emergency Medical Treatment and Labor Act).

74.     The regulations are also arbitrary and capricious because they force disclosure even when no exception applies. FERPA makes several exceptions to the consent requirement. For example, it permits disclosure without a student's consent when an educational institution receives a lawfully issued subpoena. But the institution may disclose information in response to a subpoena only after making a reasonable effort to notify the affected student so that the student can "seek

protective action." The Board's regulations do not condition disclosure on a subpoena. Nor do they condition disclosure on reasonable notice to the affected student. And they do not provide any process or procedure to impacted students to submit objections and have those objections heard and properly considered. Rather, they require disclosure automatically, regardless of whether a subpoena has been issued, whether a student has received adequate notice, or whether a student objects and seeks to take protective action. *Compare* 29 C.F.R. §§ 102.63(b)(i)(C), 102.66(d), *with* 20 U.S.C. § 1232g(b), *and* 34 C.F.R. § 99.31.

75.     On the facts here, no exception applied. While the Board issued a subpoena before the hearing, that subpoena was not self-enforcing. *See, e.g.*, *NLRB v. Duval*, 357 U.S. 1, 9 (1958) ("Congress has provided, in § 11 (2), that the Board's subpoenas may be enforced only by a United States District Court, and thus an effective means exists to revoke an illegal or oppressive subpoena duces tecum before the damage has been done."). Nor did students receive adequate opportunity to seek protective action. The Regional Director summarily denied two objecting students' motion to intervene, and further denied all the objecting students' objections without providing any rationale or explanation to the students. When the Hearing Officer issued her preclusion order, two students were still seeking Board review of Defendant Henderson's decision to deny their motion to intervene. Dozens of other students had raised similar objections to disclosure. To proceed as the Board did, without robust or complete process for the objecting students, is inconsistent with how courts have handled FERPA objections in other litigation contexts. *See, Browning v. University of Findlay Board of Trustees*, 2016 WL 4079128 (N.D. Ohio, 2016) (providing an example of how meaningful legal consideration and resolution of student objections submitted by Vanderbilt have been handled by a court).

76.     Regardless, the Hearing Officer, at Defendant Henderson's instruction, did not

predicate her order on the subpoena. She predicated her order on Vanderbilt's alleged failure to include personal information in its position statement required by the Board's regulations—framing the concrete conflict of information required by the Board's regulations but protected by FERPA. *Compare* 29 C.F.R. § 102.63(b)(i)(C), *with* 20 U.S.C. § 1232g(b).

77.     In addition, the Board's regulations do not provide any protection from redisclosure of student information. Indeed, FERPA's regulations state that a University may only share education records on the condition that the receiving party not disclose such information to any other party without the prior consent of the student. 34 C.F.R. § 99.33(a). Even if the subpoenas at issue here are lawful and enforceable, the NLRB has issued no order or regulation that responses to such a subpoena shall not be disclosed as required by 34 C.F.R. § 99.31(a)(9)(ii)(B). To the contrary, the NLRB's disclosure regulations require that student information be provided to <u>both</u> the NLRB and the union at the same time with no limitations on either party's ability to redisclose such information.

**This Action is Properly Before the Court**

78.     Vanderbilt's challenge to the Board's regulations is timely. Under 5 U.S.C. §§ 704 and 706, as well as 28 U.S.C. § 2401(a), a party has six years to challenge a final agency action (including a regulation). The party's claim accrues when it is first injured by the regulation. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2449–50 (2024). Vanderbilt was injured by the rule on October 25, 2024, when the Hearing Officer applied the regulations to issue a preclusion order. Vanderbilt's claim is well within the six-year period.

79.     The NLRA's review scheme does not prevent this Court from exercising jurisdiction. Again, as a general rule, the NLRA provides no direct review for Board certification orders. Instead, it allows a respondent to seek review indirectly only after refusing to bargain and

being charged with an unfair labor practice. *See* 29 U.S.C. § 160(f); *Am. Fed'n of Lab.*, 308 U.S. at 409. But that general rule does not govern this complaint for two reasons. First, this complaint involves not a certification order, but an invalid regulation. Second, this claim is collateral to the NLRA's review process.

80.    First, because this complaint involves a challenge to an invalid regulation, this Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 704 and 706. This complaint does not ask the Court to review any certification order. Rather, it asks the Court to declare unlawful and set aside a regulation as applied to Vanderbilt that has injured and will continue to injure Vanderbilt and prejudice Vanderbilt's rights. Such a regulation is reviewable under the APA. *See* 5 U.S.C. § 704 (allowing judicial review of "final agency action for which there is no other adequate remedy"); *Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 833 (E.D. Tenn. 2022) (explaining that substantive agency rules are "by definition, final agency action" and thus subject to review under the APA), *aff'd.*, 104 F.4th 577 (6th Cir. 2024).

81.    Second, this complaint is collateral to the Board's certification proceedings. It therefore falls outside the typical review process. That principle was established in *Leedom v. Kyne*, 358 U.S. 184, 187–88 (1958), where the Supreme Court held that a party need not exhaust the Board's standard review process when the Board (a) acts contrary to a clear statutory mandate, and (b) the party could not otherwise get adequate judicial review.

82.    Both conditions are satisfied here. First, Defendants acted contrary to a clear statutory mandate by ordering Vanderbilt to disclose information from student education records in violation of FERPA, and by penalizing Vanderbilt for complying with its statutory obligations under FERPA. Second, Vanderbilt cannot otherwise get adequate judicial review. The standard NLRA review process applies only to Board "orders." It does not apply to Board regulations. *See*

29 U.S.C. § 160(f) (permitting specified courts of appeals to review the Board's "orders"); *Chamber of Com. of U.S. v. NLRB*, No. 6:23-CV-00553, 2024 WL 1203056, at *9–10 (E.D. Tex. Mar. 18, 2024) (explaining that the Board's regulations are not "orders" under § 160(f) and are instead properly challenged through the APA process in district court) ("[N]either the text, structure, nor purpose of the Act supports defendants' extension of [the § 160(f)] procedure to cover judicial review of prospective Board rulemaking."). Vanderbilt's only avenue to challenging the invalid regulations is therefore through the APA.

83. Even if Vanderbilt could challenge the regulation through the NLRB's standard review process, Vanderbilt's rights would already have been irrevocably prejudiced. It would have already suffered one of two injuries. First, if it capitulated to Defendants' demands, it would have disclosed information from student education records, thereby jeopardizing its federal funding. Second, if it resisted those demands, it would have surrendered its most effective opportunity to shape the unit determination. Vanderbilt cannot effectively challenge the determination once made because courts afford the Board wide latitude to draw election units in the first instance. Its best opportunity to affect the determination is during the Board's process—not later, on a petition for judicial review. *See Kindred Nursing*, 727 F.3d at 559–60 (deferring to Board's discretion over unit determination); *Bry-Fern Care Ctr., Inc. v. N.L.R.B.*, 21 F.3d 706, 709 (6th Cir. 1994) (same). *Cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) (explaining that due process requires that a person have an opportunity to "invoke the discretion of the decisionmaker" before the decision is made).

84. To take just one example, Vanderbilt is divided into ten schools and colleges, including the College of Arts and Science, the Blair School of Music, Peabody College of Education and Human Development, the Divinity School, the Graduate School, the School of

Engineering, the Law School, the School of Medicine, the School of Nursing, and the Owen Graduate School of Management. Graduate students in these schools have different schedules, responsibilities, class loads, teaching assistanceships, research assistanceships, academic demands, and academic supervisory arrangements. They pursue different requirements under the guidance of different faculty. Yet the petition seeks to represent all of them in one election and (ultimately) bargaining unit. Vanderbilt maintains that they cannot join a single appropriate unit because they share no community of interest. If it is precluded from offering argument or evidence on that point, it will be unable to explain how their terms and conditions differ. And it will be effectively prevented from doing so later in a court review proceeding, where the court will review the Board's determination only for abuse of discretion. *See Bry-Fern Care*, 21 F.3d at 709 ("Determining an appropriate bargaining unit is closely tied to the unique facts of any given case. Therefore, the Board is given broad discretion in making unit determinations, and we will uphold a unit determination unless it is arbitrary, unreasonable, or an abuse of discretion." (internal citations omitted)).

85.     Alternatively, if Vanderbilt disclosed educational-record information as demanded by Defendants, the harm to students and Vanderbilt would be immediate. Students' privacy would be immediately violated; their right to keep their education records safe from prying eyes would be lost, and they would have no protection against redisclosure. Likewise, Vanderbilt's obligations under FERPA would be immediately undermined. It would have disclosed student education records in a manner inconsistent with FERPA, exposing it to the immediate risk of losing its federal funding. Neither injury could be cured by later judicial review. *See Fla. Atl. Univ. Bd. of Trustees v. Parsont*, 465 F. Supp. 3d 1279, 1297 (S.D. Fla. 2020) (finding that university would suffer irreparable harm without an injunction prohibiting tutoring company from accessing student

records stored on university's servers because without an injunction, the university could not protect the records and would thus be exposed to liability).

86.     The same conclusion flows from the Supreme Court's decisions in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) and *Axon Enterprises, Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023). Under those decisions, even when a statute provides an administrative process subject to later judicial review, judicial review is available immediately when (a) exhaustion under the administrative process would foreclose all meaningful judicial review, (b) the claim is wholly collateral to the administrative proceedings, and (c) the claim involves issues outside the agency's expertise.

87.     All three criteria are present here.

88.     First, if Vanderbilt were forced to raise its challenge through the NLRA's review process, it would be irreparably injured while that process played out. Vanderbilt would be forced to either (a) forgo its best opportunity to shape the unit determination, or (b) disclose information from student records protected by FERPA and therefore place its federal funding in jeopardy. Either way, its injury would be complete by the time a court ultimately considered its challenge. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010) (explaining that a party does not have an adequate opportunity for review when its only option is to appeal an administrative sanction) ("We normally do not require plaintiffs to 'bet the farm . . . by taking violative action' before testing the validity of the law.'" (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 129 (2007))). *Accord Consumers' Rsch. v. FCC*, 67 F.4th 773, 786 (6th Cir. 2023), *cert. denied,* 144 S. Ct. 2628 (2024).

89.     Second, Vanderbilt's challenge to the Board's regulations is wholly collateral to the NLRA's review process. Again, the NLRA provides for direct review only of Board "orders."

Vanderbilt challenges no order per se; it instead challenges the Board's regulations and failure to enact any appropriate process to address disclosure of student records under FERPA. The challenge involves an issue discrete from any decision on the merits in a Board proceeding. It is therefore wholly collateral. *See Free Enters.*, 561 U.S. at 490 (finding constitutional challenge collateral to PCAOB proceedings when standard review procedure involved only review of SEC orders); *Axon*, 598 U.S. at 194 ("[E]ven when a proceeding is pending, an occasional claim may get immediate review—in part because it involves something discrete.").

90.     Third, Vanderbilt's claim is outside the Board's expertise. The claim involves the interpretation of FERPA, a federal statute. The Board has no special competence in interpreting federal statutes, much less a statute it does not administer. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 520 (2018) ("[O]n no account might we agree that Congress implicitly delegated to an agency authority to address the meaning of a second statute it does not administer."); *Rieth-Riley Constr. Co. v. NLRB*, 114 F.4th 519, 528–29 (6th Cir. 2024) ("We do not defer to the NLRB's interpretation of the NLRA, but exercise independent judgment in deciding whether an agency acted within its statutory authority." (citing *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262, 219 L.Ed.2d 832 (2024))); *Hudson Inst. of Process Rsch. Inc. v. NLRB*, No. 23-60175, 2024 WL 4222177, at *4 (5th Cir. Sept. 18, 2024) ("[W]e do not simply defer to an agency's interpretation of 'ambiguous' provisions of their enabling acts.").

91.     Vanderbilt's challenge is therefore properly before the Court. The Court should consider the claim, declare the Board's rules invalid as applied to Vanderbilt, hold them unlawful, and set them aside.

**Vanderbilt is Entitled to Temporary and Permanent Injunctive and Declaratory Relief**

92.     In addition to the remedies set out in 5 U.S.C. § 706, Vanderbilt is entitled to

injunctive and declaratory relief. Specifically, it is entitled to an injunction forbidding the Board from applying its unlawful regulations to force Vanderbilt to disclose information from student records without student consent under FERPA. Vanderbilt is also entitled to an order forbidding the Board from penalizing Vanderbilt for complying with its obligations under FERPA and precluding Vanderbilt from offering evidence or argument regarding the appropriateness of the proposed election unit. Finally, Vanderbilt is entitled to a declaration that it cannot be forced to produce information from student education records except through a process compliant with FERPA.

93. Temporary injunctive relief is proper because, for the reasons set out in the preceding paragraphs, Vanderbilt is likely to succeed on the merits and it will face irreparable harm if the proceedings are allowed to proceed under the Board's invalid regulations. The balance of interests also favors Vanderbilt, as no party will be prejudiced by an order allowing Vanderbilt to protect student privacy, and such an order will protect students from unwanted disclosures and respect Congress's judgment, as reflected in FERPA.

## VI.     PRAYER FOR RELIEF

WHEREFORE Plaintiff Vanderbilt requests that Defendants be cited to appear, and the Court find, declare, and enter judgment awarding Plaintiff the following relief:

1. An order declaring unlawful and setting aside the Board's regulations at 29 C.F.R. § 102.63(b)(i)(C), 102.66(d), and 102.67(l) as inconsistent with FERPA as applied to Vanderbilt, 20 U.S.C. § 1232g;

2. An order directing Defendants not to apply those regulations to Vanderbilt to the extent the regulations would require Vanderbilt to disclose information from educational records in a manner inconsistent with FERPA;

3. An order forbidding Defendants from applying the regulations to prejudice or

prevent Vanderbilt from exercising its rights in the representation-petition process, including, but not limited to, presenting evidence in support of its position during a representation case hearing and requiring Vanderbilt to provide a voter list absent appropriate FERPA processes and protections;

4.  A judgment declaring that Vanderbilt must permit the objecting students' formal objections to be adjudicated before it can disclose the information subpoenaed by the Board and protected by FERPA;

5.  Temporary and permanent injunctions ordering the Board to reopen the record and to permit Vanderbilt to offer evidence and argument on the appropriateness of the proposed election unit;

6.  Temporary and permanent injunctions preventing the Board from taking further action on the petition until the Court resolves this complaint on the merits; and

7.  Alternatively, an order for the Board to proceed with a FERPA-compliant process, including notice and an opportunity to object for affected students.


Respectfully submitted,


*/s/ Timothy A. Rybacki*
Timothy A. Rybacki, TN Bar No. 034038
trybacki@littler.com
LITTLER MENDELSON, P.C.
333 Commerce Street, Suite 1450
Nashville, Tennessee 37201
615.383.3033 (Phone)
615.383.3323 (Fax)

ATTORNEYS FOR PLAINTIFF VANDERBILT UNIVERSITY

| | | |
|---|---|---|
| **VANDERBILT UNIVERSITY** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civ. Action No.** _____ |
| | § | |
| **NATIONAL LABOR RELATIONS** | § | |
| **BOARD, a federal administrative agency,** | § | |
| **and LISA Y. HENDERSON, Regional** | § | |
| **Director, NLRB Region 10** | § | |
| *Defendants.* | § | |
| | § | |

## VERIFICATION

1.      I am the vice provost for graduate education, dean of the Graduate School, Director of the Office of Postdoctoral Affairs, and Centennial Professor of Sociology at Plaintiff Vanderbilt University. I am authorized to make this sworn verification on behalf of Plaintiff;

2.      I have read the foregoing Complaint. Based on the information known by Plaintiff—including information in my personal knowledge, information reported to Plaintiff by its employees, information maintained by Plaintiff in the ordinary course of its business, and information gathered to date in the course of the election-petition proceedings described in the Complaint—I affirm that the factual statements made in the Complaint are true and correct to the best of Plaintiffs knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 29, 2024.

*C. André Christie-Mizell*

C. André Christie-Mizell
Vice Provost for Graduate Education
Dean of the Graduate School
Director, Office of Postdoctoral Affairs
Centennial Professor of Sociology