UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **VANDERBILT UNIVERSITY,** | : |
| *Plaintiff*, | : |
| | : Case No. 3:24-cv-01301 |
| v. | : |
| | : District Judge Waverly Crenshaw, Jr. |
| | : |
| | : Magistrate Judge Jeffrey Frensley |
| **NATIONAL LABOR RELATIONS BOARD**, a federal administrative agency, and **MATTHEW TURNER**, Regional Director, NLRB Region 10, | : |
| *Defendants*. | : |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS
AND DISMISSAL OF THE COMPLAINT AS MOOT**

This case arose from a now-withdrawn union representation petition filed by Vanderbilt Graduate Workers United – International Union, UAW (Union), docketed as NLRB Case 10-RC-351808 (Petition). That Petition asked the National Labor Relations Board (NLRB)[1] to conduct an election to determine whether a majority of certain student employees of Vanderbilt University (Vanderbilt) wanted the Union to represent them. [*See* Compl., ECF No. 1, 14]. Following a series of events in the administrative proceeding in the NLRB's Region 10 regarding the Petition, Vanderbilt filed the Complaint in the instant case. Vanderbilt's suit seeks purely prospective relief, which essentially amounts to an order enjoining the NLRB from processing the Petition based on allegations that the NLRB's application of its regulations to Vanderbilt conflict with provisions in

---

[1] "NLRB" refers to the agency as a whole; "the Board" to the five-member quasi-judicial, quasi-legislative body established by 29 U.S.C. § 153(a).

1

the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"), and pose a corresponding threat of harm to Vanderbilt. After briefing by the parties, this Court ultimately issued a preliminary injunction against the NLRB at the end of 2024.

Almost concurrently with the Court's issuance of a preliminary injunction, the Union requested to withdraw its Petition. The NLRB approved the withdrawal request in short order and the entire administrative case has closed. Thus, Vanderbilt is not subject to any representation-election proceedings and none of the Board's contested regulations are being applied to Vanderbilt. As such, Vanderbilt is not suffering any actual or threatened injury arising from the enforcement of the NLRB's regulations against it, and the Court cannot grant Vanderbilt any effectual relief. The case is accordingly moot and should be dismissed without prejudice.

## BACKGROUND

### I. The Union's petition for an election at Vanderbilt and the NLRB's administrative proceedings prior to the withdrawal of the petition

As detailed in the Court's Memorandum Opinion and Order dated December 12, 2024, the Union filed its Petition on October 2, 2024, in Region 10 of the NLRB. An administrative proceeding followed, culminating in an administrative hearing that closed on October 28, 2024. [Mem. Op., ECF No. 53, 2-3]. By that date, Vanderbilt had filed with the Board an appeal requesting that the Board review actions that occurred in the underlying administrative proceeding. [Compl., ECF No. 1, 17-18 (paras. 62, 66, 69-70)].[2] *See Vanderbilt Univ. v. NLRB*, No. 3:24-CV-01301, --- F. Supp. 3d ---, 2024 WL 5109420, *1-*3 (M.D. Tenn. Dec. 12, 2024).

---

[2] This request for review was styled as a Motion and Brief for Expedited Review of Regional Director's Order Denying Stay of Subpoena Compliance, Submission of Statement of Position, and Representation Hearing to Consider Student Intervention and FERPA Objections to Region's Subpoena, and is publicly available at https://www.nlrb.gov/case/10-RC-351808, Request for Review of RDs Decision and Order (Oct. 18, 2024).

## II. Vanderbilt's district court lawsuit

On October 29, 2024, Vanderbilt filed its Complaint in the instant case under the Administrative Procedure Act (APA). Vanderbilt's Complaint challenges NLRB regulations 29 C.F.R. §§ 102.63(b)(1)(i)(C), 102.66(d), and 102.67(l) "to the extent they have been and will be applied to Vanderbilt in a manner inconsistent with Vanderbilt's obligations under FERPA." [Compl., ECF No. 1, 18 (para. 70)].[3] Specifically, the Complaint alleges that because the Union's Petition concerned a proposed unit of students, 29 C.F.R. § 102.63(b)(1)(i)(C) required Vanderbilt to disclose "information that also qualified as an educational record under FERPA," which, if improperly disclosed, could jeopardize Vanderbilt's federal funding *Id.* at 9-10 (paras. 26, 29, 30), 15 (para. 53). Vanderbilt also alleges that a subpoena issued by the Regional Director on October 7, 2024 ("the Subpoena"), similarly sought FERPA-protected information and jeopardized Vanderbilt's federal funding if FERPA-protected information was improperly disclosed. *Id.* at 15-16 (paras. 55-56), 20 (para. 75). The Complaint further alleges that on October 25, 2024, the Regional Director for Region 10 instructed a hearing officer to rule that under 29 C.F.R. §§ 102.63(b)(1)(i)(C) and 102.66(d), Vanderbilt would be precluded from offering evidence or argument on the unit's appropriateness because Vanderbilt had not provided the information required by 29 C.F.R. § 102.63(b)(i)(C). *Id.* at 17-18 (paras. 64, 67). Vanderbilt also alleged that if an election is held, "Vanderbilt will be required to disclose FERPA-protected student information in a voter list" pursuant to 29 C.F.R. § 102.67(l). *Id.* at 6-7 (para. 17).

Vanderbilt's Complaint identified seven prayers for relief, all of which are tied to the Petition filed by the Union and the subsequent administrative proceedings in NLRB Case 10-RC-351808,

---

[3] Vanderbilt's Complaint refers to 29 C.F.R. § 102.63(b)(1)(i)(C) as "29 C.F.R. § 102.63(b)(i)(C)," omitting (1). [*See e.g.* Compl., ECF No. 1, 18 (paras. 67, 70, 72)]. But as the Court noted [Mem. Op., ECF No. 53, 7 n.4], the correct citation is to 29 C.F.R. § 102.63(b)(1)(i)(C).

3

including the issuance of the Subpoena. *Id.* at 27-28. More specifically, Vanderbilt seeks the following relief:

> (1) An order declaring three NLRB regulations as inconsistent with FERPA "as applied to Vanderbilt…;"
>
> (2) An order directing the NLRB "not to apply those regulations to Vanderbilt to the extent those regulations would require Vanderbilt to disclose information … in a manner inconsistent with FERPA;"
>
> (3) An order forbidding the NLRB from "from applying the regulations" to prevent Vanderbilt from exercising its rights "in the representation-petition process…;"
>
> (4) A judgment permitting "the objecting students' formal objections to be adjudicated" before Vanderbilt can disclose "the information subpoenaed by the Board…;"
>
> (5) Injunctions to reopen "the record" in NLRB Case 10-RC-351808 "to permit Vanderbilt" to challenge "the proposed unit" sought by the Union;
>
> (6) Injunctions preventing the Board from processing "the petition…;" and
>
> (7) "Alternatively," an order for the Board to proceed in a manner that protects the rights of "affected students."

*Id.*

On December 12, 2024, after briefing by the parties, this Court issued a Memorandum Opinion and Order granting, in part, Vanderbilt's motion for a preliminary injunction [Mem. Op., ECF No. 53; Order, ECF No. 54]. *See Vanderbilt Univ.*, 2024 WL 5109420, at *29. Therein, the Court addressed the Complaint as an as-applied challenge to certain regulations and preliminarily enjoined the NLRB from applying its regulations to Vanderbilt in a manner that would violate the APA or FERPA. *Id.* at *22, *23, *29.

The Court found that a preliminary injunction was proper because "Vanderbilt is likely to succeed on its claim that the Regulations, as applied to it here, are not in accordance with the law under 5 U.S.C. § 706(2)(A)." *Id.* at *23. The Court reasoned that "Defendants are applying the Regulations to Vanderbilt in a manner that is not in accordance with the law, particularly because their application of the Regulations directly conflicts with Vanderbilt's FERPA obligations." *Id.* at

4

*24. The Court recognized that "the Regulations undoubtedly have application outside of the instant context," but found that "here, Vanderbilt, as an academic institution receiving federal funding, cannot comply with both FERPA and the Regulations as currently written during *this* election proceeding." *Id.* (emphasis added). The Court based this conclusion on its findings that the NLRB's regulations required Vanderbilt to disclose certain information about students, and an educational institution's failure to do so means "they are precluded from contesting the appropriateness of the proposed unit and the eligibility or inclusion of individuals at the pre-election hearing," which, it found, "is exactly what happened here." *Id.* at *25. Thus, as to likelihood of success, the Court ruled that, "[t]he conflict between the Regulations and FERPA is substantial," and "Vanderbilt is likely to succeed on its APA claim that Defendants' application of the Regulations to it are not in accordance with FERPA." *Id.*

The Court further found Vanderbilt demonstrated that irreparable harm would result absent an injunction, based on "the threat to Vanderbilt's loss of federal funding" and the prospect that "Vanderbilt will continue to be forced to participate in election proceedings governed by Regulations that could again force Vanderbilt to choose between its rights in NLRB proceedings and its federal obligations." *Id.* at *26. The Court was not persuaded by the NLRB's arguments that the availability of eventual judicial review and relief through the normal statutory proceedings mitigates any allegations of harm, stating, "Defendants fail to properly consider that *their* enforcement of the Regulations are the problem at issue." *Id.* at *27.[4]

The NLRB filed an Answer to the Complaint on January 6, 2025. [Answer, ECF No. 58]. An Initial Case Management Conference is scheduled for March 17, 2025. [Order, ECF No. 61].

---

[4] In that Order, this Court also dismissed under Rule 12(b)(1), any request for relief as to the Subpoena and the Regional Director's preclusion order based on the lack of subject matter jurisdiction. [Mem. Op., ECF No. 53, 26; Order, ECF No.54, 1 (para. 4)].

5

### III. The Union's withdrawal of the Petition and the NLRB's closure of the administrative case.

On December 12, 2024, shortly before the Court issued the Memorandum Opinion and Order, the Union made a request to the Region to withdraw its Petition. [*See* Exhibit 1, attached]. On December 16, 2024, the NLRB Regional Office notified the parties that the Union's withdrawal of its Petition had been approved with prejudice, explaining that any petition filed by the Union within the next six months for the same or a substantially similar unit of employees would not be entertained unless good cause is shown. *See* the NLRB's December 16, 2024 docket for Case 10-RC-351808, available at www.nlrb.gov/case/10-RC-351808.

On January 8, 2025, the Board issued letters notifying Vanderbilt and the Union that in light of the withdrawal of the Petition, the issues raised to the Board in certain appeals during the representation proceedings (i.e., the Employer's Request for Review from October 18, 2024, and other requests for review that were filed by the Petitioner Union and certain proposed intervenors to the case) "are now moot" and "will no longer be considered by the Board." *See* the NLRB's January 8, 2025 docket entries for Case 10-RC-351808, available at www.nlrb.gov/case/10-RC-351808. As a result, by January 8, 2025, the administrative proceedings that gave rise to Vanderbilt's Complaint had closed.

**LEGAL STANDARD**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is allowed at any time "[a]fter the pleadings are closed—but early enough to not delay trial." Fed. R. Civ. P. 12(c). A defense based on lack of subject-matter jurisdiction may be raised at any time, including in a Rule 12(c) motion. Fed. R. Civ. P. 12(h)(2), 12(h)(3); *see also* Charles A. Wright & Arthur R. Miller, Judgment on the Pleadings—In General, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.) ("if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under

Rule 12(b)(1)."); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979) ("The mere fact [a] motion [is] couched in the terms of Rule 12(c) does not prevent the district court from disposing of the motion by dismissal rather than by judgment."). And here, mootness provides the basis for the NLRB's motion to dismiss for lack of subject-matter jurisdiction.

## ARGUMENT

**I.       The Union's withdrawal of the Petition and the closing of the representation case moots Vanderbilt's claims, and thus mandates dismissal.**

"The starting point for [a mootness] analysis is the familiar proposition that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (cleaned up). "It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." *US v. Juv. Male*, 564 U.S. 932, 936 (2011) (cleaned up). "Throughout the litigation, the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (cleaned up).

Simply put, if "the court's decision would lack any practical effect, the case is moot." *Ohio v. United States Env't Prot. Agency*, 969 F.3d 306, 308 (6th Cir. 2020); *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (a matter is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party."). That is because Article III's "'case or controversy' requirement prohibits all advisory opinions" and the Sixth Circuit has made clear that its opinions cannot merely serve as an "academic[] exercise." *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 714-15 (6th Cir. 2011). The Supreme Court has been equally clear that it is "not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *DeFunis*, 416 U.S. at 318.

In *Juvenile Male*, the Supreme Court explained that throughout the litigation a plaintiff must have suffered or be threatened with (1) harm, (2) traceable to the defendant, and (3) that can be

7

redressed by a favorable judicial decision. 564 U.S. at 936. Here, Vanderbilt's Complaint is entirely predicated on the NLRB's processing of a single union petition involving a specific unit of employees. But that Petition has since been withdrawn upon the Union's request, and its associated administrative case, NLRB Case 10-RC-351808, has been closed, with prejudice against the Union. Consequently, the NLRB is no longer applying any of the contested regulations in the complained-about proceeding. Vanderbilt will never be forced to disclose FERPA-protected records as a result of the now-withdrawn Petition, and thus no longer faces the prospect of any harm from the proceeding.[5] This circumstance moots Vanderbilt's claims and divests this Court of jurisdiction, warranting dismissal of this case.

Beyond this lack of harm, Vanderbilt's claims are not capable of judiciable redressability based on the type of relief it seeks. *Ohio*, 969 F.3d at 308 (if "the court's decision would lack any practical effect, the case is moot."). Critically, Vanderbilt does not seek *any* retrospective relief for any alleged harm. [Compl., ECF No. 1, 27-28]. Rather, all seven prayers for relief seek exclusively prospective relief—five are aimed at enjoining the NLRB from applying certain regulations against Vanderbilt or otherwise processing NLRB Case 10-RC-351808, *id.* (paras. 2, 3, 5, 6, 7), and two seek declaratory relief as to the application of those regulations against Vanderbilt and the NLRB's administrative conduct in the processing of the Petition, *id.* (paras. 1, 4). But as the election Petition is no longer pending, the prospective injunctive relief sought by Vanderbilt would lack any practical or effective impact. *See Ohio*, 969 F.3d at 308 (if "the court's decision would lack any practical effect, the case is moot.").

---

[5] Moreover, the Court's reasons for finding previously that Vanderbilt faced a threat of irreparable harm absent a preliminary injunction no longer exist. There is no longer a "threat to Vanderbilt's loss of federal funding," nor is Vanderbilt being "forced … to choose between its obligations under FERPA and the Regulations," and Vanderbilt is not participating in an administrative proceeding in which a preclusion order could be issued against it or have any effect. *Vanderbilt Univ.*, 2024 WL 5109420, at *26-27.

This Court's inability to grant Vanderbilt effectual injunctive relief applies equally to Vanderbilt's request for declaratory relief, as demonstrated by the Supreme Court's decision in *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016). There, the plaintiff sought both injunctive and declaratory relief as to a particular procurement. But, as the Supreme Court noted, because the services at issue in that procurement had long since been completed, there was nothing for the court to enjoin and "declaratory relief would have no effect here with respect to the present procurements because the services have already been rendered." *Id.* Here, declaratory relief as to the NLRB's processing of the now-withdrawn Petition would have no effect given that NLRB Case 10-RC-351808 has closed with prejudice. *Id.*

Accordingly, the withdrawal of the Petition leaves this Court with nothing to resolve and a legal mandate to dismiss Vanderbilt's Complaint on mootness grounds. *Juv. Male*, 564 U.S. at 936 (a case becomes moot if a suit can no longer "be redressed by a favorable judicial decision"); *DeFunis*, 416 U.S. at 316 ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.") (cleaned up); *Fialka-Feldman*, 639 F.3d at 714-15 (Article III "prohibits all advisory opinions").

## II. Vanderbilt cannot show that this case meets the exception to mootness for claims that are "capable of repetition, yet evading review."

Vanderbilt may seek to invoke the established exception to the mootness doctrine for disputes that are "capable of repetition, yet evading review." [*See* Pl.'s Opp. to Defs.' Mot. to Stay, ECF 65, at 6-7]. But that claim applies "only in exceptional situations" that are inapplicable here. *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)) (cleaned up). Namely, it applies only when (1) "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration;" and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." *US v. Juv. Male*, 564 U.S. at 938 (quoting *Spencer*, 523 U.S. at 17) (emphasis added). Put differently, courts ask whether (1) such

9

controversies are "*always* so short as to evade review," and (2) is there a "*reasonable likelihood*" that the same party will be subject to the same issue again. *Spencer*, 523 U.S. at 18 (emphases added); *see also Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006) ("This doctrine applies when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur.").

Once the NLRB carries its burden of demonstrating mootness, *see Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001), Vanderbilt then has the burden to demonstrate that this case falls within the "capable of repetition, yet evading review" exception. "The party asserting that this exception applies bears the burden of establishing both prongs." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559–60 (6th Cir. 2021) (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005)).

### a. Vanderbilt cannot demonstrate a reasonable expectation that the circumstances of this case will be repeated.

Vanderbilt's claims are not "capable of repetition," because there is no "reasonable expectation or demonstrated probability" that Vanderbilt will be subject to the same series of events in the future. *See Libertarian Party*, 462 F.3d at 584. "[A] mere physical or theoretical possibility that the events prompting the suit will come back is not enough." *Thompson v. DeWine*, 7 F.4th 521, 525 (6th Cir. 2021) (cleaned up); *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982). As the Sixth Circuit has held, "speculation does not get the job done." *Thompson*, 7 F.4th at 526; *see also Speer v. City of Oregon*, 847 F.2d 310, 311–12 n.3 (6th Cir. 1988) ("Plaintiff cannot avoid mootness by engaging in speculation that at some point in the future she may move and then return and seek to run for City

10

Council and again be subjected to the residency requirement."). Thus, a case "is not capable of repetition if it is based on a unique factual situation." *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560.[6]

Here, the underlying representation case presented just such a unique factual situation; accordingly, the notion that those same circumstances are "capable of repetition" would be entirely speculative. There are multiple factual circumstances within a future representation petition that could occur differently, should another unit of Vanderbilt student employees seek to be represented by a union. Indeed, whether another petition will be filed at all is entirely unknown, as a union could choose to seek voluntary recognition from Vanderbilt rather than petition the NLRB for recognition through a Board-certified election. And if a petition is filed, certain preconditions must be met to trigger the regulations at issue, such as a "showing of interest" among 30 percent of a petitioned for unit.[7] A failure to demonstrate that showing would generally doom any petition from proceeding at all.

But assuming *arguendo* Vanderbilt can establish a sufficient probability of another student representation petition being filed (with the requisite showing of interest), the way in which that future petition would be processed may well be quite different from what occurred in the now-closed representation proceeding. To establish that the past circumstances are "capable of repetition," Vanderbilt must show, first, that substantially similar NLRB regulations would be in

---

[6] In this way, the capable of repetition inquiry resembles the Article III principle applicable to the related issue of standing, namely that "some day intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the actual or imminent injury that our cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (allegations of "*possible* future injury are not sufficient.") (cleaned up) (emphasis added).

[7] *See* 29 C.F.R. § 102.61(a) )(settings various preconditions to the filing of a petition, including evidence that "a substantial number of employees in the described unit wish to be represented by the petitioner."); NLRB Casehandling Manual, Part 2, Representation Proceedings §11023.1, available at www.nlrb.gov/guidance/key-reference-materials/manuals-and-guides (defining "substantial" to mean at least 30 percent of the employees in the unit the petitioner claims appropriate, unless "exceedingly rare" "special factors" apply).

11

effect (despite that they been regularly amended over recent years)[8], and second, that the NLRB would continue to assert jurisdiction over student employees—a questionable issue.[9]

And critically, Vanderbilt must show those regulations would be applied to it in a substantially similar way as they were applied in the case of the instant Petition. *Libertarian Party*, 462 F.3d at 584. That factor alone is a tall order for Vanderbilt, as the current regulations do not dictate precisely how representation cases proceed. Rather, as discussed in a prior filing [Defs.' Mem. in Support of Mot., ECF No. 27-1, 2-3], under the current regulations, regional directors enjoy substantial discretion in the processing of a representation petition.

Specifically, Section 102.66(d) provides that if an employer fails to produce required information (as occurred here), a regional director nevertheless has the "discretion to direct the receipt of evidence concerning any issue, such as the appropriateness of the proposed unit, as to which the Regional Director determines that record evidence is necessary." *See* 29 C.F.R § 102.66(b).

---

[8] *See, e.g.,* "Representation-Case Procedures," 88 Fed. Reg. 58,076 (2023); "Representation-Case Procedures," 84 Fed. Reg. 69,524 (2019); "Representation-Case Procedures," 79 Fed. Reg. 74,308 (2014).

[9] Case law as to whether university students may be employees under the NLRA has changed substantially over the course of decades. *See The Trustees of Columbia Univ. in the City of New York & Graduate Workers of Columbia-GWC, UAW ("Columbia University")*, 364 NLRB 1080 (2016) (addressing shifts in case law dating back to the 1970s). For instance, in *The Leland Stanford Junior University*, 214 NLRB 621, 623 (1974), the Board held certain university research assistants were primarily students and thus *not* employees under the NLRA. *Accord Adelphi University*, 195 NLRB 639 (1972); *Cedars-Sinai Medical Center*, 223 NLRB 251 (1976); *St. Clare's Hospital*, 229 NLRB 1000 (1977). However, the Board revisited that stance in *Boston Medical Center*, 330 NLRB 152 (1999), and *New York University ("NYU")*, 332 NLRB 1205 (2000), concluding that medical interns, residents, clinical fellows, and later certain graduate assistants *do* fall under the NLRA's coverage. A few years later, in *Brown University*, 342 NLRB 483 (2004), the Board overruled its decision in *NYU*, categorically excluding student teaching and research assistants from the Act's coverage. By 2016, the Board reversed course again, overruling *NYU*, in *Columbia University*. 364 NLRB at 1080.

As an alternative to case-by-case adjudication, in 2019, the Board proposed a rule to establish that student-employees may not organize under the NLRA. "Jurisdiction-Nonemployee Status of University and College Students Working in Connection With Their Studies," 84 Fed. Reg. 49,691; however, that notice of proposed rulemaking was later withdrawn. 86 Fed. Reg. 14,297 (2021).

12

In addition, regional directors may also delay the date for an employer's submission of required student information in a Statement of Position to permit the employer to comply with FERPA notice obligations (29 C.F.R § 102.63(b)(1)); such delayed submission would thus be "timely," which would obviate preclusion. *See* 29 C.F.R § 102.66(d) ("A party shall be precluded from raising any issue, presenting any evidence … that the party failed to raise in its timely Statement of Position"). Likewise, regional directors have limited authority to postpone the submission of the voter list in Section 102.67(l),[10] including for FERPA-related reasons. *See* 79 Fed. Reg. at 74,352 and 74,353 (n.217) (recognizing that parties are required to conform their conduct to statutory requirements).

There are other ways that election proceedings under the Board's current representation case procedures may unfold differently. Rather than precluding employers from introducing evidence, regional directors could choose to go to federal court to enforce a subpoena for the information needed for an initial list or a final voter list. 29 U.S.C. § 161(2). Additionally, it is possible that if an employer refuses to turn over any necessary voter information, a regional director may choose to permit voters to vote by affidavit. NLRB Case Handling Manual, Part 2, Section 11328. In short, because regional directors have substantial discretion in the application of representation regulations, Vanderbilt cannot show that the regulations would be applied to it in a future election proceeding in a substantially similar way as what occurred in the underlying case.[11]

---

[10] *See* Decision and Direction of Election at 16-17, *Northeastern Univ.*, Case 01-RC-311566 (NLRB July 14, 2023), available at https://www.nlrb.gov/case/01-RC-311566 (noting FERPA's requirements and setting due date for voter list ten days after issuance of DDE); Decision and Direction of Election at 11 n.3, *Trustees of the Univ. of Penn.*, Case 04-RC-327396 (NLRB March 19, 2024), available at https://www.nlrb.gov/case/04-RC-327396 (noting that voter list information will be provided following the issuance of a subpoena to ensure FERPA requirements are met).

[11] That the regulations may be applied differently to Vanderbilt is particularly possible because Region 10 now has a different regional director overseeing representation proceedings. *See Matthew Turner Named Regional Director for the NLRB's Region 10*, NLRB (Nov. 5, 2024), available at https://www.nlrb.gov/news-outreach/region-10-atlanta/matthew-turner-named-regional-director-for-the-nlrbs-region-10.

13

What's more, a future representation proceeding could be resolved by the Board to Vanderbilt's satisfaction through the normal course of administrative proceedings—that is, a request for review to the Board of a regional director's decision.[12] Every year, a term for one of the Board's five seats expires, and accordingly, the Board's composition changes over time. 29 U.S.C. § 153(a). Thus, any future request for review filed by Vanderbilt would likely be considered by a differently composed Board.[13]

Simply put, the controversy over how the NLRB's regulations were previously applied to Vanderbilt is no longer live because there is no reasonable expectation that the current regulations will be applied to Vanderbilt at all in the future, much less that the regulations will be applied in precisely the same way. Accordingly, Vanderbilt cannot meet the requirement that its case is capable of repetition, as mere "speculation does not get the job done." *Thompson*, 7 F.4th at 526.

### b. *Vanderbilt cannot demonstrate that its claims could not be fully litigated in the future.*

Even if Vanderbilt could satisfy the capable-of-repetition requirement, it cannot show that the timeline for resolving issues in an NLRB representation case is "*always* so short as to evade review." *Spencer*, 523 U.S. at 18 (emphasis added). In *Spencer*, the Court held that the petitioner, who was challenging his parole revocation, had not established the evasion-of-review exception because the time between his parole revocation and the expiration of his sentence would not "always" evade review. *Id.* Here, mootness only occurred because the Union withdrew its Petition before a decision was made on whether to direct the election. Thus, the Union's withdrawal ended the representation proceeding shortly after it began. But that is hardly what *always* happens. The well-trodden path for a

---

[12] A party dissatisfied with "any action of a Regional Director" may file a request for review of the action to the Board under 29 C.F.R. § 102.67(c), (d)(4), including for requests for extraordinary relief under 29 C.F.R. § 102.67(j).

[13] On December 16, 2024, then-Chairman McFerran's term expired, creating a new vacancy on the Board.

14

union that wants to obtain an NLRB certification that it represents a unit of employees is for the union to file a petition and proceed to election—not to withdraw the petition.

The Supreme Court's reasoning in *DeFunis*, 416 U.S. at 319, applies here. That case involved a student's challenge to being denied admission to a law school. *Id.* at 314. By oral argument in the Supreme Court, the student was nearing graduation and had been assured that he would be allowed to graduate. *Id.* at 315-17. In dismissing the case as moot, the Court explained that "just because this particular case did not reach the Court until the eve of the petitioner's graduation[,] it hardly follows that the issue he raises will in the future evade review." *Id.* at 319. The Court noted that unique delays had occurred in the student's case and reasoned that "there is no reason to suppose that a subsequent case attacking th[e school's admissions] procedures will not come with relative speed to this Court… ." *Id.*

So too here. However unlikely a future student petition at Vanderbilt may be, even if the exact same events were to repeat, "there is no reason to suppose" that a challenge to how the Board applied its regulations would become moot before Vanderbilt could obtain judicial review. *Id.*

Indeed, there is every reason to suppose the opposite. Based on the unique and specific architecture of the NLRB's process for resolving representation questions, there is no actual risk that FERPA issues will elude judicial review. To demonstrate why, assume that a university employer facing an election petition has FERPA concerns and, consequently, refuses to provide voter information. That employer can maintain its position and withhold the information unless and until it is ordered to do so by a court of competent jurisdiction. The following two paths would provide complete judicial review:

<u>Path one: subpoena enforcement</u>. After issuing a subpoena for the information, the NLRB may petition a district court to enforce that subpoena against the employer under 29 U.S.C. § 161(2), and FERPA concerns would be duly litigated and resolved. *See NLRB v. Wyman-Gordon Co.*, 394 U.S.

15

759, 768 (1969) (production of NLRB election voter list information may be compelled through agency subpoena enforcement proceeding); *NLRB v. Frederick Cowan & Co.*, 522 F.2d 26, 28 (2d Cir. 1975) (same).

Path two: "technical 8(a)(5)" case. An employer that refused to provide required information can contest a union's certification by refusing to bargain with a certified union, drawing an unfair-labor-practice charge, and in that proceeding, litigating its refusal to supply information in the related representation proceeding, and then, as needed, before a court of appeals. *See generally Vanderbilt Univ.*, 2024 WL 5109420, at *26; Defs.' Mem. in Support of Mot. to Dissolve, ECF No. 31, 3-4, 13.

The availability of either route to judicial review confirms that FERPA disputes arising from representation cases can be fully litigated prior to the employer ever being required to furnish the voter information. Both paths are built into the Congressionally designed framework for resolving questions concerning representation. *See, e.g.*, *Boire v. Greyhound Corp.*, 376 U.S. 473, 477 (1964) ("[Section] 9(d) of the Act makes full provision for judicial review of the underlying certification order by providing that 'such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed' in the Court of Appeals."). Moreover, neither path is too short to allow full litigation. In other words, for an employer with FERPA concerns in an NLRB representation case, judicial review is available, not evaded.

Notably, in the instant proceedings, Vanderbilt already obtained favorable judicial relief from this Court in short order (putting aside the NLRB's position that this Court lacks subject-matter jurisdiction over the instant complaint). While final resolution of the legal issues in this proceeding has been cut short by the Union's withdrawal of the Petition, as noted above, that is hardly what would always happen. And because the administrative proceedings offer viable options for adjudicating FERPA issues, Vanderbilt cannot show that its claims will evade review.

16

### III. The voluntary cessation doctrine cannot salvage Vanderbilt's suit because mootness arose from the conduct of an independent third party, the Union.

The Supreme Court has long acknowledged "a line of decisions in this Court standing for the proposition that the voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *DeFunis*, 416 U.S. at 318. This is especially the case where the question of mootness arises "by reason of a unilateral change" on the part of a defendant. *Id.*

But here, mootness arose not from a unilateral action by a defendant, but from the action of a third party (the Union) exercising its right not to pursue representation of a bargaining unit. The Agency's ensuing approval of that withdrawal request and the closing of NLRB Case 10-RC-351808, occurred pursuant to longstanding Agency practices recognizing the centrality of employee choice in self-organization and the ability of a petitioner to drop its own petition. *See* NLRB Case Handling Manual, Part 2, Section 11112.1 ("Where, after … the close of a hearing, but before the holding of the election, the petitioning union, the sole union involved, requests timely withdrawal of its petition, the request should be approved … with 6 months prejudice … and the election should be canceled. This should be done whether or not the employer opposes the action."); *see also 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act*, ch. 10.III.A.3 (John E. Higgins, Jr. et al. eds., 7th ed. 2017) (citing at n.435 *Thiokol Chem. Corp.*, 114 NLRB 21 (1955), *Sears, Roebuck & Co.*, 107 NLRB 716 (1954); and *Waumbec Dyeing & Finishing Co.*, 101 NLRB 1069 (1952)). Approval of a petitioning-union's withdrawal request is the norm; there is no basis to believe that the exceedingly narrow grounds for denying a petitioner's request to withdraw its own petition would be applicable here, *see* NLRB Casehandling Manual, Part 2, Section 11112.1.

Because the NLRB did not cause the mootness, the circumstances do not satisfy the "voluntary cessation" exception. *See McDonnell Douglas Corp. v. NASA*, 109 F. Supp. 2d 27, 29 (D.D.C. 2000) (finding mootness did not arise from voluntary cessation by NASA but "because of

17

the conduct of a third party, namely the withdrawal of the FOIA request underlying this litigation"); *see also Amalgamated Transit Union v. Chattanooga Area Reg'l Transportation Auth.*, 431 F. Supp. 3d 961, 973 (E.D. Tenn. 2020) (mootness arises when intervening circumstances, including "events beyond either party's control[,] cause relief to become impossible or unnecessary"); *Waldrop v. City of Johnson City, Tennessee*, No. 2:19-CV-00103-JRG-CRW, 2022 WL 254572, at *7 (E.D. Tenn. Jan. 26, 2022) (same).

## CONCLUSION

Because Vanderbilt's case depends entirely on the existence of a representation petition that has since been withdrawn and administrative proceedings that have closed, the controversy is now moot. The Court should thus dismiss Vanderbilt's suit *in toto*.

Respectfully submitted,

National Labor Relations Board
Contempt, Compliance, and
   Special Litigation Branch
1015 Half St. SE
Washington, DC 20003
Fax: (202) 273-4244

Kevin P. Flanagan
*Deputy Assistant General Counsel*
Tel: (202) 273-2938
kevin.flanagan@nlrb.gov
(No official bar number in Maryland)

David P. Boehm
*Trial Attorney*
(*Admitted Pro Hac Vice*)
D.C. Bar No. 1033755
Tel: (202) 273-4202
david.boehm@nlrb.gov

/s/ Christine Flack
*Supervisory Attorney*
(*Admitted Pro Hac Vice*)
(No official bar number in Maryland)
Tel: (202) 273-2842
christine.flack@nlrb.gov; ccslb@nlrb.gov

ATTORNEYS FOR DEFENDANTS

Dated: March 10, 2025

**CERTIFICATE OF SERVICE**

I certify that on March 10, 2025, I filed the foregoing document with this Court using the CM/ECF filing system, and a copy is being served on the ECF Filers electronically by the Notice of Docket activity.

/s/ Christine Flack
*Supervisory Attorney*
(*Admitted Pro Hac Vice*)
(No official bar number in Maryland)
Tel: (202) 273-2842
christine.flack@nlrb.gov;
ccslb@nlrb.gov